UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMOND TRAPP, # 353141,

                Petitioner,

v.                                           Case Number: 08-cv-14563
                                           Honorable Marianne O. Battani

CINDI CURTIN,

                Respondent.

_____/

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

## I.     INTRODUCTION

This is a habeas case filed by a Michigan state prisoner under 28 U.S.C. § 2254.  Damond

Trapp ("Petitioner") is currently incarcerated by the Michigan Department of Corrections at the

Ionia Maximum Correctional Facility in Ionia, Michigan.  He filed this Habeas Petition, through

counsel, challenging his 2003 jury convictions in Wayne County Circuit Court for (1) second-

degree murder, (2) assault with intent to do great bodily harm, (3) three counts of assault with a

dangerous weapon (felonious assault), and (4) felony firearm.  Petitioner was sentenced to

concurrent prison terms of twenty-six to fifty years for the murder conviction, two to ten years

for the assault-with-intent conviction, and one to four years for each of the felonious-assault

convictions.  A consecutive two-year prison term was imposed for the felony-firearm conviction.

In his Habeas Petition, Petitioner challenges his convictions and sentences on the

following grounds: (1) there was insufficient evidence presented to convict him of second-degree

murder, (2) the trial judge's negative and hostile responses to a juror who expressed an inability

to decide his fate on moral grounds deprived him of an impartial jury and a fair trial, (3) counsel

was ineffective for failing to object to the trial judge's behavior, (4) the prosecution's late endorsement of four witnesses deprived him of a fair trial, (5) the prosecution's improper opening statement and repeated misrepresentations of evidence to the jury deprived him of a fair trial, (6) his sentence was based on inaccurate information, (7) the cumulative effect of the prejudicial errors rendered his trial unfair, and (8) appellate counsel was ineffective for failing to raise the foregoing claims in his direct appeal.[1]  Respondent filed an Answer to the Petition, alleging that it should be denied because Petitioner's claims are procedurally defaulted.

For the reasons stated below, the Court will deny the Petition.  The Court also will decline to issue Petitioner a Certificate of Appealability.

## II.    BACKGROUND

This case arises because of a shooting which occurred on November 8, 2002, in Detroit, Michigan, resulting in the death of Roderick Coleman.  The prosecution's theory was that Petitioner fired shots outside a residence where several young people were congregated, after he went to that residence to retrieve, from the driveway, a car which he believed had been stolen from his home.  One of those shots struck and killed Coleman.  The defense argued that Petitioner did go to the residence to retrieve his stolen car, that he did fire a gun into the air but not at anyone, and that the bullet that struck Coleman was fired by another man named "Will," who had come to the scene.  The Michigan Court of Appeals summarized the underlying facts of

---

[1]In Petitioner's Habeas Petition, on page 2, ¶ 4, counsel for Petitioner outlines these claims as the claims that are being raised in this Petition.  In claim eight, he alleges that appellate counsel was ineffective for omitting these issues, when appellate counsel filed Petitioner's direct appeal with the state appellate court.  However, counsel for Petitioner does not argue within the body of the Memorandum of Law the ineffective- assistance-of-appellate-counsel claim.  Rather, he argues in claim six, the jury-instruction claim, the same claim that was presented to the state appellate courts in his direct appeal.  The Court nevertheless will address both issues.

this case, which are presumed correct on habeas review.  *See Monroe v. Smith*, 197 F.Supp.2d

753, 758 (E.D. Mich. 2001), *aff'd*, 41 F.App'x 730 (6th Cir. 2002) (citations omitted).  The

Court of Appeals stated:

> Defendant purchased a 1981 metallic mint green Chevrolet Caprice in
> September 2002, and it was stolen in October 2002.  Terrence Brown,
> accompanied by his cousin Jerome Brown, purchased a 1981 metallic mint green
> Chevrolet Caprice in December 2002.  Jerome registered the vehicle in his name
> because Terrence did not have identification.  On November 8, 2002, Terrence,
> Jerome, and several other people were sitting on the porch at the house of
> Terrence's mother in Detroit.  Terrence's Caprice was parked in the driveway.
> Defendant arrived at the home in a Cadillac, accompanied by two individuals in a
> Buick Regal.  Defendant believed that the Caprice in the driveway was his stolen
> vehicle.
>
> Defendant got out of the Cadillac and fired several gunshots.  The
> testimony differs about whether these shots were fired at the group of people on
> the porch or into the air.  Everyone on the porch scattered; some ran into the
> house, and some fled.  Several witnesses testified that the man in the front
> passenger seat of the Regal, who was known only as "William," held a gun out
> the window and fired several gunshots.  Jerome came out onto the porch and
> asked defendant if he could retrieve some items from the Caprice.  Defendant
> replied, "not unless you want a hole in your head, too."  Defendant admitted that
> he then fired one gunshot at the windshield of an Oldsmobile that was also parked
> in the driveway.  He did so out of anger because he believed that Terrence had
> changed the tires on the Caprice.
>
> The driver of the Regal, a woman known only as "Tracy," got into the
> Caprice.  Defendant got back into the Cadillac, and the Regal, the Cadillac, and
> the Caprice drove away.  Terrence and the group remaining at the house
> discovered that Terrence's cousin, Roderick Coleman, was lying in the driveway
> near where the Caprice had been parked.  He had been killed by a gunshot to his
> head.

*People v. Trapp*, No. 249499, 2005 WL 119778, at *1 (Mich.Ct.App. Jan. 20, 2005).

At trial, Petitioner argued that, although he fired gunshots into the air, William was the

one who actually fired the shot that killed Coleman.  Accordingly, the prosecution requested jury

instructions regarding common unlawful enterprise and carjacking.  The prosecution argued that,

3

because the death of a victim was a foreseeable result of a carjacking, the jury could find Petitioner guilty of second-degree murder as an aider and abettor if they believed he participated in the carjacking.

After properly instructing the jury regarding aiding and abetting, the trial court provided the standard instruction regarding a separate crime within the scope of a common unlawful enterprise. It stated that, in determining whether Petitioner intended to help someone else commit the offense of first-degree or second-degree murder, the jury could consider whether he might have expected the murder to happen as part of the activity of carjacking. Trial Tr. vol. VIII, 92 May 12, 2003. The trial court cautioned the jury that proof that Petitioner merely intended to help commit a carjacking was insufficient. *Id.* The court also instructed the jury that the prosecution bore the burden of proving that Petitioner intended to help commit first-degree or second-degree murder. *Id.* The trial court further stated that Petitioner was not charged with carjacking and that the jury could consider it only as it related to the prosecution's theory of common criminal enterprise. *Id.* at 93. It then instructed the jury on the elements of carjacking.

The jury convicted Petitioner as stated.

Following his sentencing, on June 30, 2003, Petitioner filed a direct appeal with the Michigan Court of Appeals, raising the following claim:

> I.     The [trial court] denied defendant due process when it instructed the jury on the offense of carjacking under the prosecution theory that carjacking, though uncharged, was part of a common unlawful enterprise, but refused to instruct on the defense theory of claim of right when defendant maintained that he could not be part of a common unlawful enterprise to carjack when he was the owner of the car in question.

The Court of Appeals affirmed Petitioner's convictions and sentences. *Trapp*, 2005 WL 119778, at *3. Petitioner subsequently filed an application for leave to appeal the Court of

4

Appeals's decision with the Michigan Supreme Court.  The application was denied on September 28, 2005.  *People v. Trapp*, 474 Mich. 869, 703 N.W.2d 815 (2005) (Table).

Petitioner did not filed a petition for writ of certiorari with the United States Supreme Court.  Rather, on November 7, 2005, he filed a motion for relief from judgment with the state trial court, raising the eight claims raised in this Habeas Petition.  The trial court denied the motion on September 7, 2006, finding that Petitioner failed to establish "*good cause* and *actual prejudice* pursuant to Michigan Court Rule 6.508(D)."  *People v. Trapp*, No. 02-015220-01 (Wayne County Circuit Court Sept. 7, 2006) (emphasis added).  The Court of Appeals and the Michigan Supreme Court denied his applications for leave to appeal "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Trapp*, No. 275396 (Mich.Ct.App. May 24, 2007); *People v. Trapp*, 480 Mich. 951, 741 N.W.2d 335 (2007) (Table).

On October 28, 2008, Petitioner filed the instant Habeas Petition, raising the same claims raised in his motion for relief from judgment and subsequent appeals filed with the state courts, plus the jury-instruction claim raised in his direct appeal.  *See* n.1, *supra*.

## III.    STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
>
> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ---, ---, 130 S.Ct. 1855, 1862 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam )). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas

6

court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, --- U.S. ---, 131 S.Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)) (Stevens, J., concurring in judgment)). Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. Thus, in order to obtain habeas relief in federal court, a prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. ---, 131 S.Ct. at 786-87.

**IV.     DISCUSSION**

**A.      Jury-Instruction Claim**

As an initial matter, the Court addresses this claim because it was included as an

argument in the body of Petitioner's Memorandum of Law as claim six.  Petitioner's Brief, Argument VI, 24.  The Court finds that this claim is not procedurally defaulted.

In this claim, Petitioner alleges that he is entitled to federal habeas relief because the trial court erred in instructing the jury on the offense of carjacking under the prosecution's theory that carjacking, though uncharged, was part of a common unlawful enterprise, but refused to instruct on the defense theory of claim of right, when he maintained that he could not be part of a common unlawful enterprise to carjacking because he was the owner of the car.

In order for habeas relief to be granted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned.  Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly.  *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).  A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record.  *See Grant v. Rivers*, 920 F.Supp. 769, 784 (E.D. Mich. 1996).  State law instructional errors rarely form the basis for habeas-corpus relief.  *See Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals, the last court to issue a reasoned decision regarding this claim, stated:

> Defendant asserts that the trial court erred in refusing to instruct the jury regarding claim of right.  He argues that, because he believed the Caprice belonged to him, the jury could have found that he did not engage in carjacking. If they had found that he did not engage in carjacking, they might not have convicted him of second-degree murder.  A defendant may employ a "claim of right defense" when a dispute exists regarding his "felonious intent at the time of

8

the taking." A claim of right defense provides that, if a defendant had a good-faith belief that he had a legal right to take the property at issue, then he lacked the intent to deprive another of property.

To establish the offense of carjacking, the prosecution must prove the following:

> (1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear.

> Carjacking, unlike armed robbery involving an automobile, does not require proof that the defendant intended to permanently deprive the victim of possession of a vehicle. Rather, it constitutes a general intent crime and does not require proof of intent beyond the intent to do the act itself.

> Because the elements of carjacking do not include the specific intent to permanently deprive another of ownership of a vehicle, the claim of right defense is not available. Therefore, the trial court did not err in denying defendant's request for a jury instruction regarding this defense.

*Trapp*, 2005 WL 119778, at *2-3 (citations omitted).

The Court concludes that the trial court properly instructed the jury. Moreover, it is well established that, "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Further, the trial court instructed the jury that the instructions were as he had given them. Accordingly, the Court concludes that the Court of Appeals's decision is not contrary to federal law and does not involved an unreasonable application of Supreme Court precedent. Petitioner is not entitled to habeas-corpus relief with respect to this claim.

### B.  Petitioner's Remaining Claims Are Procedurally Defaulted

The remaining claims in Petitioner's Habeas Petition were not raised in his direct appeal. Rather, they were first presented to the state trial court in his motion for relief from judgment. As a result, Respondent argues that review of the claims is procedurally barred. To counter that

9

argument, Petitioner asserts in his eighth claim that his appellate counsel was ineffective for failing to raise the claims in the state courts during his direct appeal.

Under *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991), a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.

In Michigan, under Michigan Court Rule 6.508 (D), the rule governing motions for relief from judgment, it states that "the defendant has the burden of establishing entitlement to the relief requested." Mich.Ct.R. 6.508(D). The rule further states that relief will not be granted in the following three situations: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or post-conviction motion; and (3) where the claim could have been raised in a prior appeal or post-conviction motion but was not. *See* Mich.Ct.R. 6.508(D)(1)-(3).

In this case, the state trial court denied relief on procedural grounds. The trial court denied relief finding that Petitioner failed to establish "*good cause* and *actual prejudice* pursuant to Michigan Court Rule 6.508(D)." *Trapp*, No. 02-015220-01 (emphasis added). Additionally, the Michigan Court of Appeals and the Michigan Supreme Court denied relief with respect to Petitioner's claims by citing Michigan Court Rule 6.508(D). Petitioner's applications for leave to appeal were rejected because he failed "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Trapp*, No. 275396; *Trapp*, 480 Mich. 951, 741 N.W.2d 335.

In *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000), the Sixth Circuit held that that language constituted an invocation of the procedural aspects of Rule 6.508(D) and thus barred

10

federal-habeas review.  However, the Sixth Circuit recently rejected that rule, holding that the form orders used by the Michigan courts constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" those orders to the last-reasoned, state-court judgment to determine if the claims are barred.  *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010).  Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

In this case, looking through the appellate court orders, it is clear to the Court that the trial court denied Petitioner relief on the basis of the procedural bar in Rule 6.508(D)(3), stating, "that the defendant has not shown *good cause* and *actual prejudice* pursuant to MCR 6.508(D)." *Trapp*, No. 02-015220-01.  Thus the trial court, the last state court to issue a reasoned decision on the matter, clearly invoked the procedural bar of Rule 6.508(D)(3) in denying Petitioner's claims.  Accordingly, federal-habeas review of Petitioner's claims is barred unless he can meet one of the two exceptions to the procedural-default doctrine.

As stated, a prisoner may only obtain habeas review of such claims if he can establish "cause and prejudice" or that the failure to review the claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750-53; *see also Strickler v. Greene*, 527 U.S. 263 (1999) (same).  In order to establish "cause," to excuse his default, a habeas petitioner must establish that some objective factor external to his defense prevented him from complying with the state-procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner asserts that the ineffectiveness of his appellate counsel constitutes cause to

excuse his failure to raise his claims during his appeal of right.  In order for attorney error to constitute cause, it must rise to the level of ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Byrd v. Collins*, 209 F.3d 486, 519 (6th Cir. 2000).

Petitioner's appellate counsel raised a single, preserved, issue in his appeal of right in the Michigan Court of Appeals.  The state appellate court issued an opinion ruling on and rejecting the issue.  A fair reading of the opinion shows that the issue, though meritless, was substantial. The narrowing of an appeal to what counsel feels is the strongest point is not evidence of deficient performance.  While Petitioner's appellate counsel did not raise every conceivable claim, the Supreme Court has held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good arguments–those that, in the words of the great advocate John W. Davis, 'go for the jugular' [] –in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983) (citation omitted).

Appellate counsel's actions, of excluding the claims raised in the motion for relief from judgment in favor of others, was a strategic decision and does not constitute ineffective assistance of counsel.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the

12

presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citation omitted). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003). The Court will proceed to examine briefly claims one through five, along with claims seven and eight, to determine whether Petitioner's appellate attorney should have raised those claims on direct review

In claim one, Petitioner alleges that there was insufficient evidence presented to convict him of second-degree murder. The trial court's findings at the time of the motion for directed verdict more than sufficiently summarized the evidence presented. First, the court pointed out that the victims of the assault with intent to murder were all on the porch when Petitioner got out of his car and told them not to move. He then pointed a gun at them. Coleman was there at the time. Petitioner then began shooting. Afterward, Coleman was found dead. All the victims identified Petitioner as the shooter. On that basis alone, there was sufficient evidence presented to convict Petitioner of second-degree murder. Appellate counsel was not ineffective for failing to raise this claim in Petitioner's direct appeal.

In claim two, Petitioner alleges that the trial judge's negative comments toward a juror denied him his right to a fair and impartial jury. In claim three, he alleges that trial counsel was ineffective for failing to object to the trial judge's comments. However, the record reveals that the trial judge was merely questioning the jurors. The trial judge was requiring the jury to think about the answers they were giving and made them respond in more than just a yes or no fashion. With such discussions, both the prosecution and the defense could then make proper

13

determinations whether each juror could be fair and impartial. There was nothing improper in voir dire by the trial judge. This claim has no merit and therefore trial counsel was not ineffective for failing to object, and appellate counsel was not ineffective for failing to raise a non-meritorious claim.

In claim four, Petitioner argues that he was denied his right to a fair trial by the prosecution's late endorsement of four witnesses. The record reveals that the first witness added was done with the agreement of defense counsel. The second witness became known during the preliminary examination, when defense counsel was present. The request for the witness came from the prosecutor on the first day of trial, and the trial court indicated that defense counsel should have an opportunity to speak to the witness. The prosecutor indicated that the witness would be available. Thus, the court allowed time for defense counsel to meet and interview the witness. The third witness was agreed to by defense counsel. The fourth witness was known to defense counsel prior to trial. With that, the Court concludes that this claim lacks merit and appellate counsel was not ineffective for failing to raise the claim in Petitioner's direct appeal.

In claim five, Petitioner argues that he was denied a fair trial when the prosecutor made an improper opening statement and misrepresented evidence to the jury. The prosecutor referred to the people who joined Petitioner as his posse. The prosecutor is allowed to draw all reasonable inferences from the evidence presented. Thus, calling a group of people a posse is a reasonable inference, given that Petitioner gathered up a group of individuals to take the law into their own hands, rather than calling the police to help him retrieve what he believed was his stolen car. Again, appellate counsel was not ineffective for failing to raise a non-meritorious claim.

14

In claim seven, Petitioner argues that he is entitled to resentencing because the sentencing guidelines were incorrectly scored, his sentence was based on inaccurate information, and the trial judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt when scoring his sentencing guidelines. First, Petitioner has failed to show that the factors considered by the trial court at sentencing were materially false or improperly considered. *See Barber v. Birkett*, 276 F.Supp.2d 700, 714 (E.D. Mich. 2003). Second, to the extent that he claims that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines, that is not a cognizable claim for federal habeas review, because it is basically a state-law claim. *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003). Finally, Petitioner cannot rely on *Blakely v. Washington*, 542 U.S. 296 (2004) for support, because the holding in *Blakely* is inapplicable. The *Blakely* line of cases does not apply to Michigan's intermediate sentencing scheme. The Sixth Circuit has held that Michigan's sentencing guidelines do not violate the Sixth Amendment because they set a minimum sentence range while the maximum is set by statute. *Montes v. Trombley*, 599 F.3d 490, 494-98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009). Thus, the Court finds that Petitioner's sentencing claim is without merit. Again, appellate counsel was not ineffective for failing to raise a claim that lacks merit.

Petitioner's final claim, claim eight, alleges that the cumulative effect of all the errors justifies reversal. "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).

15

Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002)); *see also Lorraine*, 291 F.3d at 447 (same). As such, appellate counsel was not ineffective for failing to raise this claim on direct appeal.

In summary, the above-stated claims are not "dead bang winners." Therefore, Petitioner has not shown "cause," via ineffective assistance of appellate counsel, for his procedural default of failing to raise those claims on direct review. The Court's "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise[ ] issue[s] that lack [ ] merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002).

Because Petitioner has failed to establish good cause to excuse his default, there is no need to address the prejudice. *Murray*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Under the second exception, the "fundamental miscarriage of justice" exception, Petitioner can still have his procedurally barred claims reviewed if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496). "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'"

*Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623 (1998). Thus, to establish the actual innocence exception Petitioner

16

must show that, as a factual matter, he did not commit the crime for which he was convicted.

Petitioner does not present any new reliable evidence that he is factually innocent of the charges against him. *See Schlup*, 513 U.S. at 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). As Petitioner has not protested his guilt through an offer of new evidence, he cannot establish a fundamental miscarriage of justice.

In view of the foregoing, the Court concludes that these claims are barred by Petitioner's procedural default in the state courts, and that neither the cause and prejudice nor the fundamental miscarriage of justice exceptions is applicable. Accordingly, the Court denies the Petition with respect to these claims.

### C.     Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. []. When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

17

The Court concludes that reasonable jurists would not find its resolution of Petitioner's claims debatable.  The Court therefore declines to issue Petitioner a Certificate of Appealability.

## V.     CONCLUSION

Petitioner's claims one through five, and seven and eight, are barred from substantive review by Petitioner's state procedural default of failing to raise those claims on direct review. Petitioner's other claim, claim six, has no merit, because the state courts' decisions were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Petitioner has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a Certificate of Appealability.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: September 28, 2011


CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, via ordinary U.S. Mail and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt

Case Manager